Estate of John Hekman, Deceased et al. v. Commissioner. Cornelia Hekman v. Commissioner.
Estate of Hekman v. Commissioner
Docket Nos. 56358, 56359.
United States Tax Court
T.C. Memo 1957-70; 1957 Tax Ct. Memo LEXIS 184; 16 T.C.M. (CCH) 304; T.C.M. (RIA) 57070; April 30, 1957
*184 Petitioner, Cornelia Hekman, was paid $1,500 per month for 1 year, or $18,000, following her husband's death by the corporation which had employed him, of which he was an officer. She received $1,500 in 1951 and $16,500 in 1952. She did not perform any services for the corporation. Such sum was less than her deceased husband's annual salary at the time of his death. Held, such payment was a gift and is, therefore, excludable from gross income under section 22(b)(3), 1939 Code. Stuart Hoffius, Esq., for the petitioners. Robert B. Pierce, Esq., for the respondent. *185 HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined deficiencies in income tax for the taxable years 1951 and 1952, as follows: Docket No.
Taxpayer
Deficiency
56358
Estate of J. Hekman and
Cornelia Hekman, Indi-
vidually
$ 945.00
56359
Cornelia Hekman
5,908.44 The estate is involved in this proceeding only because a joint return was filed for 1951. The only issue is whether payments to the petitioner, Cornelia Hekman, in the amounts of $1,500 and $16,500, respectively, in 1951 and 1952, by the corporation of which her deceased husband had been president and general manager, were gifts, and hence, excludable from her gross income for 1951 and 1952 pursuant to section 22(b)(3) of the 1939 Code. Findings of Fact John and Cornelia Hekman filed a joint return for 1951. Cornelia Hekman filed an individual return for 1952. The returns were filed with the collector of internal revenue for the district of Michigan. Cornelia Hekman is a resident of Grand Rapids, Michigan, where she resided with her husband during the taxable years. She is the surviving spouse of John Hekman, deceased, who died on November 23, 1951, at *186 the age of 65 years. Cornelia Hekman is referred to hereinafter as Cornelia. Besides his wife, John Hekman was survived by their two children, a daughter of the age of 40, and a son of the age of 42. Cornelia was 72 years old at the time of Hekman's death. John Hekman was employed by his father at the Hekman Biscuit Company from the age of 13 until the year 1917. Thereafter John Hekman and his two brothers, Henry and Jelle Hekman, formed a partnership and conducted the business until 1928, at which time the Hekman Biscuit Company was sold to the United Biscuit Company of America. From 1928 until the date of John Hekman's death he was employed continuously by the Hekman Biscuit Company, a division of the United Biscuit Company. He was president and general manager of the Hekman Biscuit Company, and a vice president of the United Biscuit Company at the time of his death. When the Hekman Biscuit Company was purchased by the United Biscuit Company, John Hekman was employed on a 5-year contract at $18,000 per year. Thereafter he was employed on the basis of annual contracts executed between United Biscuit Company and John Hekman. John Hekman was paid $48,000 for the year 1949, and *187 $44,000 for the year 1950 by United Biscuit Company. In 1951, John Hekman was paid $16,500 between January and November, 1951, and his estate, subsequent to his death, received $13,750 in December, 1951, and $13,750 in January, 1952, making the total compensation to John Hekman and his estate the total sum of $44,000. K. F. McClellan, president of United Biscuit Company had known John Hekman since about 1912, and he executed the contract with John Hekman covering his employment for the year 1951. McClellan notified Cornelia on the day after John Hekman's funeral that United Biscuit Company of America would pay her $18,000 at the rate of $1,500 per month for one year. These payments were made to Cornelia for a period of 12 months beginning in December 1951 and ending in November 1952. There was no contract or agreement with John Hekman for such payments and the corporation was not obligated to make them. The corporation received no benefits from these payments. Cornelia performed no services for the payments, and there were no implied agreements or verbal agreements between United Biscuit Company and John or Cornelia Hekman for these payments. McClellan, in fixing the amount *188 of the payments, considered the period of service of John Hekman, the background of it, connections, and some other things. McClellan did this as president of United Biscuit Company and he reported it to the board of directors. This was done in late January or early February 1952, at a time when the board adopted a memorial resolution regarding John Hekman's death. No formal action was taken by the board with regard to McClellan's announcement about the payments to Cornelia. Article IV, sec. 3, of the by-laws of United Biscuit Company, provides that the president "shall make and sign bonds, mortgages, and other contracts and agreements of the corporation, except when the Board of Directors by resolution directs the same to be done by some other officer or agent." This has been interpreted by the board to cover the matter of making payments to the widows of executives. The United Biscuit Company charged the payments to Cornelia to "miscellaneous supplies and expense" in their income tax return. The United Biscuit Company has made payments to other widows of deceased executives. Some widows did not receive any payments, and some received less than the amount of one year's basic salary *189 of the deceased husband, and some received just one year's basic salary. There was no pattern to the payments made to widows, and no action was ever taken by the board of directors with relation to the payments made, except for the announcement at the meeting. The following schedule sets forth payments made to widows of deceased executives by United Biscuit Company, including those made to the widow of John Hekman: Date of
Date of
Amount of
Name of Executive
Death
Payment
Payment
Harry Stegall
June 1936
None
None
C. A. Bowman
July 1945
During 1945
$29,500.00
Charles Huber
May 1947
During 1947
6,666.67
T. M. Manchester
May 1947
During 1947
15,500.00
W. E. Bettridge
June 1948
July 1948-
August 1949
18,000.00
T. M. Davis
July 1950
During 1950
18,000.00
C. E. Nelson
April 1951
None
None
John Hekman
Nov. 1951
Dec. 1951-
Nov. 1952
18,000.00
C. M. Sisson
Aug. 1956
Sept. 1956-
Dec. 1957
24,000.00 *
O. B. Skadland
Dec. 1956
Dec. 1956-
Nov. 1957
12,000.00 *
Cornelia received from United Biscuit Company $1,500 in December 1951, and $16,500 during the period January *190 through November of 1952. In its Federal income tax returns for 1951 and 1952, United Biscuit Company claimed as deductions the amounts paid to Cornelia in each respective year. Respondent determined that the payments of $1,500 and $16,500, respectively, constituted taxable income to Cornelia under section 22(a). The payments made to Cornelia by United Biscuit Company in 1951 and 1952 were gifts to her. Opinion Petitioner claims that the sums paid to her by United Biscuit Company in 1951 and 1952 were gifts. We agree that the payments were gifts and that, therefore, they are excludable from her gross income for each of the taxable years under section 22(b)(3) of the 1939 Code. Respondent makes the same argument here as he did in . The facts in this case are practically the same as the facts in the Hellstrom case, we reach the same result here as was reached there, and we apply the same reasoning. The services of petitioner's husband had been fully compensated for prior to his death. The entire record in this case establishes that the payments to Cornelia, which are in question here, were gifts. As was stated in the *191 Hellstrom case, "We think the controlling facts here which establish the payment in question as a gift are that the payment was made to petitioner and not to her husband's estate; that there was no obligation on the part of the corporation to pay any additional compensation to petitioner's husband; it derived no benefit from the payment; petitioner performed no services for the corporation and, as heretofore noted, those of her husband had been fully compensated for. We think the principal motive of the corporation in making the [payments] was its desire to do an act of kindness for petitioner. The payment, therefore, was a gift to her and not taxable income." See, also ; (U.S. District Court, S. District of N. Y. 2/6/57). Decisions will be entered for the petitioners. Footnotes
*. When final payment is made.↩